UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LEROY NATHANIEL INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00486-JMS-MG |
| | ) | |
| T. J. WATSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting in Part Defendants' Partial Motion to Dismiss**

Plaintiff Leroy Nathaniel Ingram, a federal Bureau of Prisons inmate, filed this action on October 11, 2019, asserting claims pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). Dkt. 1. Mr. Ingram named eighteen defendants who are or were employed at the United States Penitentiary Terra Haute in Indiana where all events leading to his claims arose. *Id.* The Court screened the complaint pursuant to 28 U.S.C. § 1915A and identified the claims that could proceed. Dkt. 16. The defendants now move to dismiss certain claims for lack of jurisdiction and failure to state a claim. Dkt. 36. For the reasons explained below, the defendants' motion, dkt. [36], is **granted** in part and **denied** in part.

**I. Mr. Ingram's Complaint and Claims Identified to Proceed**

In the Court's screening order of February 14, 2020, Mr. Ingram's factual assertions were summarized:

> Mr. Ingram pleads that on June 5, 2019, he was placed in a holding cage, handcuffed behind his back, when defendants Dickey, Shotts, and Kleptz entered the cage and beat him, causing significant injuries. Dkt. 1, p. 6. These three defendants exited the cage and conferred with defendant Cranford, and then committed another battery on Mr. Ingram while defendants Cranford and Newlyn watched but failed to intervene and stop the battery. *Id.* Defendant Cranford then conferred with Defendants Dr. Conner, Dr. Patterson, P.A. Julian K., and Nurse May, to enlist their cooperation in covering up the battery. *Id.* Defendants

Dr. Connor, Dr. Patterson, and P.A. Julian K. are alleged to have known the battery was taking place and failed to intervene to protect Mr. Ingram. *Id.*, p. 8.

Mr. Ingram also pleads that defendants Watson, Underwood, Taylor, Thompson, Gore, Parker, and Cranford – each holding a supervisory position – know that batteries on inmates are common place at USP-TH and allow them to happen, making no effort to stop them. *Id.*, pp. 8-9. He also alleges, in addition, that defendants Watson, Underwood, Taylor, Cranford, Thompson, Gore, Parker, Shoemaker, McCoy, May, Connor, Patterson, Julian K., and Newlyn fail to take corrective action to stop the batteries. *Id.*, p. 9.

Mr. Ingram further pleads that he has suffered from blood clots since 1997, and when he entered federal prison in 2006 he was assessed to have a serious and life-threatening condition warranting assignment to Care Level 3. *Id.*, p. 11. A prison doctor continued his prescription for coumadin, a blood thinner, which he received until officials learned that Mr. Ingram had filed grievances about the battery. Defendant Dr. Wilson told Mr. Ingram that someone from the Bureau of Prison's North Central Regional Office called [and] instructed Dr. Wilson to change the coumadin medication to apixaban and to drop the care level. *Id.* Dr. Wilson complied without consulting Mr. Ingram first. *Id.* When Mr. Ingram complained about the medication change to defendant May, he was told "you know why." *Id.* Mr. Ingram turned in a health care request reporting he had a blood clot, bruises, pain, and swollen veins, and later told defendant May that he had blood in his urine. Defendants May, Julian K., and Dr. Wilson would not examine him. He gave a urine sample to Nurse McDaniels (not named as a defendant) that was confirmed to contain blood, but still was not seen by defendants Dr. Wilson or Julian K. Approximately three weeks later, Mr. Ingram was sent to a Terre Haute hospital where he remained for a week due to a blood clot.

Dkt. 16 at 3-4.

Based on the complaint and the Court's summary of factual assertions, the following claims were allowed to proceed:

Mr. Ingram states a viable Eighth Amendment claim for excessive force that shall proceed against defendants Lt. Cranford, Officer Dickey, Officer Shotts, Officer Kleptz, and Officer Newlyn. He states a viable claim pursuant to 42 U.S.C. § 1985 for conspiracy to violate his civil rights by means of excessive force that shall proceed against defendants Lt. Cranford, Officer Dickey, Officer Shotts, Officer Kleptz, Officer Newlyn, Nurse May, P.A. Julian K., Dr. Connor, Dr. Patterson, and Officer Newlyn.

Mr. Ingram also states a viable Eighth Amendment deliberate indifference to serious medical needs claim, and a viable § 1985 conspiracy claim that shall proceed against defendants Dr. Wilson, Nurse May, and P.A. Julian K.

On Mr. Ingram's pleading that supervisory officials know about beatings of inmates and allow them to occur, an Eighth Amendment excessive force and/or failure to intervene claim shall proceed against defendants Warden Watson, Associate Warden Underwood, Captain Taylor, Lt. Cranford, S.I.A. Thompson, Lt. Gore, Lt. Parker, Administrator McCoy, Coordinator Shoemaker, Nurse May, Dr. Conner, Dr. Patterson, P.A. Julian K., and Officer Newlyn.

*Id.* at 4.

## II.  Defendants' Grounds for Relief

The defendants seek the dismissal of all claims *except* the Eighth Amendment excessive force claims against Andrew Cranford, Benjamin Dickey, Tyler Shotts, Kyle Kleptz, and Richard Newlyn. Some defendants seek dismissal because they enjoy statutory absolute immunity from liability. Ten defendants argue that 42 U.S.C. § 1985(3) conspiracy claims are not viable against government actors. Others seek dismissal because of a lack of subject matter jurisdiction, and one because Mr. Ingram failed to state a claim upon which relief can be granted. Dkt. 37. Mr. Ingram opposes the dismissal of any defendant. Dkt. 48.

### A.  Legal Standards for Motions to Dismiss

To survive a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chi.*, 907 F.3d 487, 491 (7th Cir. 2018).

With a motion to dismiss due to lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1), the same standard just discussed applies. But "'[t]he district court may [also] properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'"

*St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

A motion to dismiss on the basis of absolute immunity is also evaluated pursuant to the Rule 12(b)(1) standard.

### B.      Defendants Julian and May

Defendants Kimberly Julian, a physician's assistant, and Joseph May, a registered nurse, seek dismissal pursuant to 42 U.S.C. § 233(a) because they are employees of the Public Health Service and enjoy statutory absolute immunity. Section 233(a) provides:

> The remedy against the United States provided by [the Federal Tort Claims Act, 28 U.S.C. § 1346, 2671-80] for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

The Supreme Court has held that the plain language of § 233(a) confers officers and employees of the Public Health Service with absolute immunity from suits brought under *Bivens*. *Hui v. Castaneda*, 559 U.S. 799, 802, 805-06 (2010).  Each defendant has submitted a declaration confirming they were an employee of the Public Health Service at all times relevant to Mr. Ingram's claims. Dkts. 36-1 & 36-2. The Eighth Amendment deliberate indifference to serious medicals needs claims brought by Mr. Ingram against these defendants address the delivery and non-delivery of medical services. *See* dkt. 1 at 7-12.

In opposition to defendants Julian and May's motion to dismiss, Mr. Ingram argues that the purpose of *Bivens* is to allow an action against a government employee who would otherwise be immune from suit under the government's sovereign immunity. Dkt. 48 at 5-6 (citing *Sterling v. United States*, 85 F.3d 1225, 1228-29 (7th Cir. 1996)). Mr. Ingram is correct that *Bivens* created a

right of action for certain constitutional claims brought against government employees in their individual capacities, thus waiving any sovereign immunity. 403 U.S. 388. But defendants Julian and May are not asserting a defense of sovereign immunity. Rather, they correctly argue that § 233(a) blankets them with statutory absolute immunity from any claims arising from the performance their duties.

Mr. Ingram argues next that these defendants were not acting within the scope of their employment and therefore do not enjoy § 233(a) immunity. Dkt. 48 at 9-10. Defendant May, he contends, was not acting within the scope of his employment when he entered the holding cage and wiped blood from Mr. Ingram's face because the incident was not being recorded. *Id.* at 10. According to Mr. Ingram, Defendant May's knowledge that his actions were not being recorded, together with the alleged falsification of medical records (containing incorrect times of events), was conduct that was not within the scope of his employment. *Id.* Mr. Ingram also asserts that defendant Julian's failure to "see him long before his condition reached the extent that [he] had to be placed in the hospital" was a failure that was not within the scope of her employment. *Id.* at 11.

Unfortunately for Mr. Ingram, he is incorrect that the alleged acts and omissions of defendants Julian and May were not within the scope of their employment. All of the allegations against these defendants concern the delivery or non-delivery of medical services, which is exactly what they were employed to provide. Even the preparation of their reports, alleged to be false, was within the scope of their employment. Mr. Ingram's interpretation of what actions are within the scope of employment are simply wrong.

Defendants Julian and May's motion to dismiss for lack of subject matter jurisdiction is **granted**. Fed. R. Civ. P. 12(b)(1); 42 U.S.C. § 23(a).

5

**C.      Defendants Watson, Underwood, Taylor, Cranford, Thompson, Gore, Parker, McCoy, Shoemaker, May, Conner, Paterson, Julian, and Newlyn**

Defendants Watson, Underwood, Taylor, Cranford, Thompson, Gore, Parker, McCoy, Shoemaker, May, Conner, Paterson, Julian, and Newlyn argue that the Court identified them as "supervisory officials" and directed Mr. Ingram's claims against them to proceed. They seek dismissal because *Bivens* does not recognize vicarious, or *respondeat superior*, liability, and because some of them are not supervisors. Dkt. 37 at 5-6.

The defendants misstate the Court's screening order. No *respondeat superior* claim was directed to proceed. Dkt. 16 at 4. Rather, the Court understood Mr. Ingram to plead that the defendants themselves knew about other prison employees beating inmates and took no steps to stop or intervene the beatings. Such a claim does, in fact, implicate personal responsibility rather than vicarious liability.

The defendants acknowledge this principle in their cite to *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012), for the holding that a "supervisor can be liable only if he wants the unconstitutional or illegal conduct to occur." Dkt. 37 at 6. Construing Mr. Ingram's complaint liberally, that is what he pleads. Dkt. 1 at 8-9.

In his response to the defendants' argument, Mr. Ingram focuses on the officials' alleged failure to investigate and preparing false reports. Dkt. 48 at 12-15. The Court noted in the screening order that a violation of internal policies and regulations, as well as attempts to conceal the battery, are not constitutional violations. Dkt. 16 at 5. No such claims were directed to proceed. *Id.* But Mr. Ingram argues that the defendants' activities – or lack of activity – shows that "they all wanted the unconstitutional or illegal conduct to occur . . . ." Dkt. 48 at 15-16.

At the pleading stage and applying the legal standards of a motion to dismiss, all permissible inferences must be drawn in Mr. Ingram's favor. *Tucker*, 907 F.3d at 491. Mr. Ingram's

6

assertions may be speculation at this point, but they have at least a plausible basis in the alleged facts.

The defendants' argument to dismiss the Eighth Amendment excessive force claims are therefore **denied**.

### D.  Defendant Wilson[1]

Defendant Dr. Wilson argues that Mr. Ingram fails to state an Eighth Amendment claim against him. Dkt. 37 at 8. He argues that Mr. Ingram failed to plead sufficient facts to state a claim for deliberate indifference to serious medical needs because, at most, Mr. Ingram's allegations show a difference of opinion between a patient and his doctor, which is not deliberate indifference. *Id.* at 9.

The Court disagrees with Dr. Wilson's assessment of Mr. Ingram's claim. The allegation against Dr. Wilson is that he received a call from someone with the Bureau of Prison's North Central Regional Office who instructed him to discontinue Mr. Ingram's blood thinner coumadin, replace it with apixaban, and drop the care level. Dkt. 1 at 11. He did so without consulting Mr. Ingram. *Id.*

When Mr. Ingram entered federal prison in 2006, he was assessed to have suffered blood clots since 1997, constituting a serious and life-threatening condition. *Id.* His prescription for coumadin was continued. *Id.* Sometime soon after Dr. Wilson stopped the coumadin, Mr. Ingram asked to be seen for a blood clot, bruises, pain, and swollen veins. *Id.* Dr. Wilson would not examine him, even after he turned in a urine sample confirmed to contain blood. *Id.*

---

[1] Dr. Wilson has not alleged that he is an employee of the National Health Service, and neither have defendants Dr. Connor and Dr. Patterson.

Approximately three weeks later, Mr. Ingram had to be taken to a Terre Haute hospital where he remained for a week for treatment of a blood clot. *Id.*

These allegations are decidedly more than a disagreement between a patient and his doctor. If proven true, a rational trier of fact could conclude that deliberate indifference to serious medical needs occurred. At the pleading stage and on a motion to dismiss a claim pursuant to Rule 12(b)(6), the Court looks to the allegations of the complaint to assess whether the factual allegations state a claim for relief. Here, they do.

Finally, as to Dr. Wilson's arguments, he argues in his reply that Mr. Ingram did not plead that he ever was seen by Dr. Wilson, and therefore he could not have been deliberately indifferent. Dkt. 54 at 4-5. Dr. Wilson is mistaken. Mr. Ingram's allegations are that Dr. Wilson changed his medications and lowered a care level without consulting him, and then would not see him when complications arose. This is sufficient involvement in Mr. Ingram's medical care to allow consideration of a deliberate indifference claim. *See Arnett v. Webster*, 658 F.3d 742, 758 (7th Cir. 2011).

Dr. Wilson's motion to dismiss is **denied**.

**E.  Section 1985 Conspiracy Claims**

Mr. Ingram asserted a 42 U.S.C. § 1985(3) conspiracy to violate civil rights claim against ten defendants – Cranford, Dickey, Shotts, Kleptz, Wilson, May, Julian, Connor, Patterson, and Newlyn. The defendants make two arguments for dismissal of these claims. Because the Court finds merit in the first, discussion of the second is unnecessary.

The defendants argue that § 1985(3) applies only to private parties who have conspired with a government employee to violate a plaintiff's civil rights. Dkt. 37 at 10. Mr. Ingram opposes dismissal, arguing in essence that because two or more persons are prohibited from conspiring

together to violate civil rights, the statute is applicable to the defendants. Dkt. 48 at 23-26. Mr. Ingram has no authority to support his position. *Id.*

"[T]he function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with [government] actors.'" *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). "When, as here, the defendants are 'all [government] actors,' a § 1985(3) claim does not add anything except needless complexity." *Id.*).

The defendants' motion to dismiss the § 1985(3) claim is **granted**.

### III.  Conclusion

For the reasons explained above, the defendants' motion to dismiss, dkt. [36], is **granted** in part and **denied** in part. All claims against defendants Julian and May are **dismissed** with prejudice and the **clerk is directed** to terminate them from the docket. All conspiracy claims brought pursuant to 42 U.S.C. § 1985(3) are **dismissed** with prejudice. All other claims shall proceed as pleaded and identified in the screening order.

No partial final judgment is necessary at this time.

**IT IS SO ORDERED**.

Date: 4/29/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Leroy Nathaniel Ingram
39693-083
Tucson - USP
Tuscon U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 24550
Tuscon, AZ 85734

Lara K. Langeneckert
United States Attorney's Office (Indianapolis)
lara.langeneckert@usdoj.gov