UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LEROY NATHANIEL INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00486-MG-JMS |
| | ) | |
| T. J. WATSON, | ) | |
| MICHAEL UNDERWOOD, | ) | |
| TIMOTHY TAYLOR, | ) | |
| CRANFORD, | ) | |
| THOMPSON, | ) | |
| GORE, | ) | |
| PARKER, | ) | |
| DICKEY, | ) | |
| SHOTTS, | ) | |
| K. KLEPTZ, | ) | |
| MCCOY, | ) | |
| BRAD SHOEMAKER, | ) | |
| WILLIAM E. WILSON, | ) | |
| CONNOR, | ) | |
| PATTERSON, | ) | |
| NEWLYN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Interested Party. | ) | |

**Order Granting Motion for Summary Judgment and
Directing Entry of Final Judgment**

In this prisoner civil rights lawsuit, Leroy Ingram contends officers at the United States

Penitentiary in Terre Haute, Indiana ("USP Terre Haute" or the "Facility") used excessive force

while detaining him in a cell and then conspired with one another to cover up the incident. He

also alleges certain medical providers at the Facility failed to properly treat his health problems.

Though his allegations are concerning, Mr. Ingram did not complete the grievance process at USP

1

Terre Haute, nor has he shown that it was unavailable to him. Given these circumstances, Mr. Ingram has not exhausted his administrative remedies, and so Defendants' motion for summary judgment must be **granted**.

## I. Legal Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial.  *See* Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law.  *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material facts" are those that might affect the outcome of the suit.  *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inference from it in the light most favorable to the nonmoving party.  *Khungar v. Access Community Health Network*, 985 F.3d 565, 572 – 73 (7th Cir. 2021).  The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant.  *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Background

Because Defendants are moving for summary judgment, the Court presents the facts in the light most favorable to Mr. Ingram.  *Stark v. Johnson & Johnson*, 10 F.4th 823, 825 (7th Cir. 2021).  This does not mean the Court vouches for the objective truth of the facts; it only means the Court assumes them to be true for the purposes of ruling on this motion.  *Reid Hospital and Health Care Servs., Inc. v. Conifer Revenue Cycle Solutions, LLC*, 8 F.4th 642, 645 (7th Cir. 2021).

2

*The Incident*. Mr. Ingram's claims stem from an incident that occurred on June 5, 2019. Dkt. 1, Complaint at 3.[1] According to Mr. Ingram, officers at USP Terre Haute placed him into a holding cell and started insulting him. *Id.* When Mr. Ingram responded, several officers entered the cage and slammed Mr. Ingram's head and face into the wall. *Id.* at 4. A few minutes later, the officers uncuffed Mr. Ingram and punched him. *Id.* One of the officers then choked Mr. Ingram while another one beat him. *Id.* Mr. Ingram eventually passed out and woke up with a bloody mouth. *Id.* He was treated for lacerations to both his upper and lower lips. *Id.*

*USP Terre Haute's Grievance Policy*. USP Terre Haute's grievance policy (the "Grievance Policy" or "Policy") follows both the Bureau of Prison's standardized grievance procedures and its own institutional supplement.[2] The Grievance Policy is both explained to inmates at orientation and made available at the Facility's law library. Dkt. 77-1, Declaration of Renee Turner ¶ 4. Inmates who have questions about the Policy can request help from staff members. *Id.*

Under the Policy, an inmate must file four different types of grievances before suing in court: (1) BP-8, (2) a BP-9, (3) BP-10, and (4) BP-11. The timeline for filing and responding to the grievances depends on the type of grievance:

> (1) A BP-8 is an informal grievance that must be filed first. If the issue cannot be resolved informally, the inmate can proceed to filing a BP-9.
>
> (2) A BP-9 is a formal grievance directed to the Warden. A BP-9 must be completed within twenty days of the date of the incident giving rise to the grievance. The warden then has twenty days to respond. If twenty days is insufficient, the time may be extended an additional twenty days (giving the Warden forty days in-total).

---

[1] The Court considers Mr. Ingram's Complaint, dkt. 1, and Response, dkt. 80, as evidence because he swore under the penalty of perjury that the asserted facts in them were true. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

[2] Defendants have attached USP Terre Haute's institutional supplement, dkt. 77-2, but not the Bureau of Prison's standardized grievance procedures. Those procedures, however, are codified at 28 C.F.R. § 542.10 *et seq*, and Defendants have cited them accordingly. The Court therefore does the same.

(3) A BP-10 is a formal appeal directed to the Regional Director. Once the inmate receives the Warden's decision, the inmate has twenty days to file a BP-10. The Regional Director has thirty days to respond, and if that is insufficient, the time may be extended an additional thirty days (giving the Regional Director a total of sixty days to respond).

(4) A BP-11 is the final appeal directed to the General Counsel. The inmate must file a BP-11 within thirty days of receiving the Regional Director's response. The General Counsel has a grand total of sixty days to respond (forty days plus a twenty-day extension).

*See* 28 C.F.R. §§ 542.13 – 542.15; *see also* Dkt. 80-1, Policy Response Time at 4. If the inmate does not receive a response within any of the above time frames, the inmate may deem the absence of a response a denial and move on to the next level. § 542.18.

*Mr. Ingram's Grievances*. Mr. Ingram filed three grievances[3] giving rise to this lawsuit. Dkt. 80 at 9 – 15; Dkt. 77-1 at ¶ 10. The filing dates and timing of the grievances are important, but it is undisputed Mr. Ingram never pursued any of the grievances through a final appeal.

The First Grievance (#981865-F1) was filed on June 19, 2019. Dkt. 80 at 9. It concerned Mr. Ingram's complaints about the excessive force incident. Dkt. 77-6, June 19th Grievance. The Warden responded to the grievance on July 1, 2019, and Mr. Ingram received the response on July 10, 2019. Dkt. 80 at 10. Mr. Ingram filed an appeal (#981865-R1), which was received by the regional director on July 24, 2019. Dkt. 77-1 at ¶ 10. After receiving nothing by August 22, 2019, Mr. Ingram spoke with Officer Christopher Gore and asked why he had not heard anything related to his appeal. Dkt. 80 at 11. Officer Gore stated that the Facility had the response, but that Mr. Ingram would not be getting it. *Id.* This prompted Mr. Ingram to file a BP-8 on September 11, 2019 complaining about the lack of a response (to the First Grievance) based on what Officer Gore

---

[3] Mr. Ingram states he filed four grievances, *see* dkt. 82, Ingram Affidavit at 1, but the second grievance he identifies is really just an appeal of the first grievance. The Court treats these grievances (#981865-F1 and #981865-R1) as one for the purposes of this Order.

told him. *Id.* After he did not hear anything for another two weeks, Mr. Ingram filed this suit, on September 29, 2019. [4] Shortly after suit was filed, Mr. Ingram received a response on October 1, 2019 from the Warden concerning Mr. Ingram's BP-8 and a response from the Regional Director on October 2, 2019 concerning Mr. Ingram's appeal. Dkt. 80-2, Affidavit of Leroy Ingram ¶ 9.

The Second Grievance (#982691-F1) was filed on June 26, 2019. Dkt. 80 at 13. The record is not clear what this grievance addressed. The Facility rejected this grievance, however, because Mr. Ingram failed to include a referenced attachment with his submission. Dkt. 77-1 at ¶ 10. Mr. Ingram never received the rejection or heard anything related to this grievance. Dkt. 80 at 13.

The Third Grievance (#990202-F1) was filed on September 4, 2019. Dkt. 80 at 14. Mr. Ingram had not heard anything related to this grievance by September 29, 2019—the time he filed his complaint. *Id.* However, on October 8, 2019, Mr. Ingram received the Facility's response, which rejected the Third Grievance because (a) Mr. Ingram did not attempt to informally resolve the grievance, and (b) he attached too many continuation pages. Dkt. 77-1 at ¶ 10.

### III. Discussion

Defendants argue summary judgment is appropriate because Mr. Ingram failed to pursue any of his grievances through a final appeal, and so he has failed to exhaust his administrative remedies.

The Prison Litigation Reform Act requires inmates to exhaust their available administrative remedies before suing in federal court. 42 U.S.C. § 1997e(a); *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). This requirement is mandatory: a court cannot excuse an inmate's failure to exhaust. *Ross v. Blake*, 578 U.S. 1174, 1856 (2016). To satisfy the Act's

---

[4] Mr. Ingram's complaint was not docketed until October 11, but it was "filed" the day he mailed it—September 29. *See Taylor v. Brown*, 787 F.3d 851, 858 – 59 (7th Cir. 2015).

exhaustion requirement, an inmate must strictly comply with the prison's administrative rules for filing grievances. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Failure to exhaust is an affirmative defense, so Defendants bear the burden of proof. *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018).

The administrative remedies, however, must be "available" to the inmate. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016) (internal quotations and citations omitted); *see also Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("The exhaustion requirement, however, hinges on the availability of administrative remedies.") (internal quotations omitted) (citing *Ross*, 578 U.S. at 1858). An inmate is not required to exhaust administrative remedies that are unavailable. *Hernandez*, 814 F.3d at 842 (citations omitted). An inmate's remedies may be unavailable if prison administrators prevent the inmate from using the grievance process through intimidation. *Ross*, 578 U.S. at 644.

It is undisputed Mr. Ingram did not strictly comply with the Facility's Grievance Policy as he failed to pursue any of his grievances through a final appeal. Dkt. 77-1 at ¶ 10; *see* Dkt. 80 at 9 – 20. The only question is whether the grievance process was "available" to him.

The record shows that it was. Inmates at the Facility received an explanation of how to utilize the grievance process at orientation and could ask the Facility staff questions if they did not understand something. Skt. 77-1 at ¶ 4. Mr. Ingram has utilized the grievance process, *see* dkt. 77-5, Mr. Ingram's Grievance History, and there is no evidence that Mr. Ingram could not otherwise avail himself of USP Terre Haute's grievance process. *Cf. Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). Since the grievance process was "available" and Mr. Ingram did not complete it with respect to any of his grievances, Defendants have carried their burden of showing Mr. Ingram failed to exhaust his administrative remedies.

Mr. Ingram objects on several grounds. He first argues that he did not receive timely responses to his First and Third grievances until after his complaint was filed and that he never received a response—at all—to his Second Grievance. Dkt. 80 at 10, 13, and 14. But the Facility's Policy and regulations makes clear that inmates should treat an untimely response or a lack of one as a denial and then move to the next step of the grievance process. Dkt. 80-1 at 4 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial *at that level*.") (emphasis added); *see also* 28 C.F.R. § 542.18. Even crediting Mr. Ingram's account that he never received a response or received them too late, the Policy required him to proceed to the next level of appeal, not to stop the process and sue in federal court. *Reid*, 962 F.3d at 329 (inmates must strictly comply with the prison's administrative rules for filing grievances); *see also Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("[There was] a process available to [the plaintiff]; he had to stick with that process until its conclusion rather than make a beeline for court just because administrative officials gave his appeal the time needed to resole it.").[5]

Mr. Ingram next contends that the process became "unavailable" with respect to his First Grievance when Officer Gore told him the Facility had the Regional Director's response, but that Mr. Ingram would not be getting it. Dkt. 80 at 9 – 12. Even if that is true, however, nothing *prevented* Mr. Ingram from treating that response as a denial and then filing an appeal to the General Counsel. *See Kaba*, 458 F.3d at 684 ("[W]hen prison officials prevent inmates from using

---

[5] True, some cases have found an inmate's administrative remedies are unavailable when prison officials fail to respond to a properly filed grievance. *E.g. Dole v. Chandler*, 438 F.3d 804, 809 (7trh Cir. 2006); *see also Reid*, 962 F.3d at 331. But in those cases, the regulations were either silent or unclear as to the next step in the grievance process when an inmate failed to receive a response. *Dole*, 438 F.3d at 811 ("The regulations were not clear about how to proceed once a timely grievance was lost."). Here, by contrast, USP Terre Haute's Policy and the federal regulations specifically state a lack of a response may be considered a denial.

the administrative process detailed in the Code of Federal Regulations, the process that exists on paper becomes unavailable in reality."). There is no evidence that USP Terre Haute officials withheld the necessary forms, *Dale*, 376 F.3d at 655 – 56, or failed to inform him of the process. *Hernandez*, 814 F.3d at 843. Rather than follow the next step in the Policy, Mr. Ingram responded by filing a new grievance, related to the prison official's conduct, to which the Warden eventually responded. Dkt. 80 at 12. Given that Mr. Ingram did not even attempt to file an appeal and that the Policy directed inmates to treat a lack of a response as denial, the Court cannot say the process was unavailable to Mr. Ingram.

Mr. Ingram next insists the Facility improperly rejected his Third Grievance, which related to his medical treatment. Dkt. 80 at 13 – 15. He argues it only contained one continuation page (not two), and so the Facility's rejection (for having two pages) was improper. But the record shows the Third Grievance's continuation page contained writing on both the front and back. Dkt. 12-3, Grievances at 9 – 11. The Facility did not improperly classify this as two pages. *See* 28 C.F.R. § 542.14(c)(3) (noting inmates may use *one* additional continuation page to state their complaint). And it was within its powers to reject the grievance on that basis. *Bridges v. Gilbert*, 557 F.3d 541, 555 n. 4 (7th Cir. 2009) (noting a prison may reject grievances that do not comply with its procedural requirements).

Finally, Mr. Ingram argues his case manager refused to accept a grievance on June 13, 2019 related to the incident. Dkt. 80 at 9. However, it is undisputed Mr. Ingram submitted a grievance related to the same incident on June 19, 2019, and the Warden eventually responded. *Id.* at 9 – 10.

In short, the undisputed evidence shows the grievance process was available to Mr. Ingram, and that he failed to exhaust all of his claims pursuant to USP Terre Haute's Policy. Summary

judgment in Defendants' favor is therefore appropriate, and Mr. Ingram's claims must be dismissed without prejudice. *Ford*, 362 F.3d at 401 (dismissals under § 1997e(a) should be without prejudice).

### IV. Conclusion

For those reasons, Defendants' motion for summary judgment, dkt. [77], is **GRANTED**. Mr. Ingram's claims are **DISMISSED without prejudice.** Final judgment shall be entered accordingly.

**IT IS SO ORDERED**.

Date: 11/23/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

Distribution:

LEROY NATHANIEL INGRAM
39693-083
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov